146 So.2d 257 (1962)
A. P. CARTER, Plaintiff-Appellee,
v.
The TRAVELERS INDEMNITY COMPANY, Defendant-Appellant.
No. 9755.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1962.
Theus, Grisham, Davis, Leigh & Brown, Monroe, for appellant.
Woodrow Wilson, Bastrop, for appellee.
Before HARDY, GLADNEY and AYRES, JJ.
AYRES, Judge.
This is an action by a father to recover hospital and medical expenses incurred in the treatment of his minor son, Robert P. Carter, for injuries allegedly sustained while the son was entering the automobile of one John R. Jones. Recovery is sought under the medical expense coverage of the policy of defendant, insuring the Jones automobile.
The applicable provisions of the medical payment section of the policy provide that the defendant agrees
"To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services:
"To or for the named insured and each relative * * *

*258 "To or for any other person who sustains bodily injury, caused by accident, while occupying
"(a) the owned automobile, while being used by the named insured, by any resident of the same household or by any other person with the permission of the named insured; * * *."
Under a policy definition, "`occupying' means in or upon or entering into or alighting from" an automobile.
Thus, the primary issues presented for determination are made by plaintiff's assertion and defendant's denial that plaintiff's son sustained accidental bodily injuries while entering into the insured automobile, for the treatment of which necessary medical and hospital expenses were incurred, as sued for. Thus, the question is whether plaintiff's son was entering the insured vehicle at the time the injuries were sustained, and, if so, whether defendant's refusal to pay was arbitrary, capricious, or without probable cause, warranting an assessment of penalties and attorney's fees. These issues were resolved by the trial court in plaintiff's favor, and, from a judgment rendered in accordance therewith, defendant prosecutes this appeal.
The questions presented are largely factual in character. Certain of the facts are undisputed; others are vigorously contested. A brief statement, therefore, appears essential to a proper appreciation of the issues as they are resolved.
The facts, undisputed, are that, on the date of the accident, November 25, 1959, Robert P. Carter, with his date, one Sue Rudolph, accompanied Mr. and Mrs. John P. Jones to the wedding of one Dexter Brown near Rayville, Louisiana. After the wedding and the reception which followed, the bride and the groom had gotten into their car which was parked in front of the bride's residence on the north shoulder of the highway facing west. Brown was unable to start his car; whereupon, he and his bride borrowed the Jones automobile and drove off in a westerly direction. Returning within approximately five minutes thereafter, Brown parked the Jones automobile in the north lane of the highway facing east, approximately parallel with and some five feet distant from his own automobile.
While the bride and the groom were gone in the Jones car, Carter and his date, together with one Pat Jones, got into the Brown automobile and turned the radio on. Miss Rudolph was seated under the wheel and Carter, to her right. Upon the return of the Jones vehicle, these parties alighted from the Brown vehicle and approached the Jones automobile with the intention of entering the same. Carter opened the door of the Jones automobile and Sue Rudolph entered therein; whereupon, Carter, hearing the squeal of brakes of an automobile approaching at a rapid rate of speed, and realizing that a collision was imminent, attempted, but unsuccessfully, to pull Sue Rudolph from the car in order that they might reach a place of safety and avoid being struck by the approaching automobile. Momentarily thereafter, the Jones and Brown automobiles were struck by the approaching car, and Carter was injured.
Throughout his testimony, both in deposition and on trial of the case, Carter described his actions at the time of the collision as entering the automobile:
"I was at the back door of Pete's (Jones') car getting in * * *;
"I had my hand on the door fixing to get in when I looked up and seen [sic] the car on me. * * *
"Just as I was fixing to get in the car I looked back and I seen [sic] it. I tried to get out of the way but he had already hit us. * * *
"* * * I was just getting in the car. * * *
"* * * I was in the process of getting in the car * * *.

*259 "* * * when the car hit because I was opening up the door. * * *
"* * * I had my hand on the door. * * *
"* * * she was getting in the car * * *
and, notwithstanding the question,
"Well had you turned the door loose and was [sic] running when something hit you?,"
to which he answered,
"Yes sir,"
the witness, nevertheless, stated:
"* * * I didn't take my hand off the door at all, til after the accident; * * *"
and insisted
"* * * But I still had hold of the door * * *
"When the collision occurred I was * * * trying to get her out in front of metrying to move and had hold of the door handle too."
Defendant nevertheless contends that Carter had abandoned his intention of entering the vehicle and was endeavoring to leave the scene in order to avoid the impending collision. This contention, in view of the preponderance of the testimony from which we have quoted, is not sustained. The conclusion is inescapable that Carter was entering the automobile at the time of the collision; that there had been no abandonment of either his intention or effort to do so.
The word "entering" is, in our opinion, clear and unambiguous. Paraphrasing one of the definitions of the word "enter," as contained in Webster's New International Dictionary, Second Edition, we find that "entering" is said to be the equivalent of coming or going into; passing into the interior of; making or effecting an entrance, and obviously means going or moving into. "Entering" is therefore an affirmative act or movement to effect an entrance.
There is no doubt, from the facts established by the record, that Carter had started into, or had taken the first steps to enter and was, therefore, in the act of entering, the vehicle when the accident occurred.
Finally, complaint is made of the allowance of penalties and attorney's fees. In this regard, it is urged that defendant's refusal to pay was neither arbitrary, capricious, nor without probable cause. The basis of this contention is that the defense was novelone which had never been urged before, so far as could be ascertained from a diligent search of all the reports and authorities. It may very well be conceded that the defense is novel in the sense that no recorded cases precisely in point have been found. However, we find no substantial basis in this record for such a defense. This, we have emphasized heretofore in reviewing the established facts.
The defendant, while apparently conceding that Carter, at one time, was engaged in entering the Jones car, takes the position that he had momentarily, before the accident, abandoned his efforts to enter the car. With this contention, we are unable to agree. If Carter had begun to enter the car, as we have found and as defendant apparently concedes, but, because of a sudden emergencyan imminent and impending collision, a peril insured againsthe momentarily desisted in his efforts to complete his entry into the vehicle, it cannot, on that account, be said with reason that he was not, at the time of the accident, entering the car. If he, in fact, desisted in his efforts, it may be correctly observed that he, literally speaking jumped for his own safety. We, therefore, find no reasonable basis for defendant's refusal to pay plaintiff's claim.
The defense, as stated, is not only novel but highly technical and finds no support in the facts established in the record, and, *260 to that extent, appears fantastic, unreal, and partaking of the imaginary.
Another basis for the complaint as to the allowance of penalties and attorney's fees is predicated on the failure of plaintiff to recover his claim in full and as demanded. This failure is accounted for by reason of the deaths of the two physicians who treated plaintiff and constitutes a matter of no important consequence inasmuch as liability for any amount whatsoever had been denied by defendant. Sbisa v. American Equitable Assur. Co., 202 La. 196, 11 So.2d 527, 145 A.L.R. 332; Sanchez v. National Life & Accident Ins. Co., La.App. Orleans, 1941, 1 So.2d 129.
The judgment, in our opinion, is correct and, accordingly, should be, and it is hereby, affirmed at defendant-appellant's cost.
Affirmed.