730 S.E.2d 862

**SOUTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Respondent,**

v.

**Henry KENNEDY, Petitioner.**

No. 27147.

Supreme Court of South Carolina.

Heard April 3, 2012.

Decided July 25, 2012.

Blake Alexander Hewitt and John S. Nichols, of Bluestein Nichols Thompson & Delgado, of Columbia; and Eric Holcombe Philpot, of Greenville, for Petitioner.

Karl Stephen Brehmer and L. Darby Plexico, III, of Brown & Brehmer, of Columbia, for Respondent.

Justice BEATTY.

South Carolina Farm Bureau Mutual Insurance Co. (Farm Bureau) brought this declaratory judgment action to determine whether Henry Kennedy (Kennedy) was entitled to underinsured motorist (UIM) coverage for an accident. The trial court found Kennedy was entitled to UIM coverage under the terms of the policy because Kennedy was "upon" and thus "occupying" the insured vehicle at the time of the accident. The Court of Appeals reversed. *S.C. Farm Bureau Mut. Ins. Co. v. Kennedy,* 390 S.C. 125, 700 S.E.2d 258 (Ct.App.2010). We granted Kennedy's petition for a writ of certiorari to review the decision of the Court of Appeals. We reverse.

## I. FACTS

Kennedy was sent by his employer, Irons Poultry Farms, Inc. (Irons), in his employer's truck, to Wise Barbeque, to tell Johnny Wise that Irons had some feed for him to pick up. Upon arrival, Kennedy left the keys in his employer's truck and went into the restaurant to deliver the message.

After delivering the message, Kennedy saw his brother, Teddie Robinson, and they engaged in a conversation while walking towards the Irons truck. Part of the conversation occurred at the rear of the Irons truck. Kennedy and Robinson finished their conversation and Robinson prepared to leave. At that moment, an accident occurred on a nearby highway between two pickup trucks. The impact of the collision knocked one of the pickup trucks driven by George Counts into the restaurant's parking lot. Counts's truck struck both Robinson and Kennedy as they attempted to escape the careening vehicle.

Kennedy sustained a broken right femur and multiple abrasions, as well as head, neck, and back injuries. His combined medical expenses and lost wages exceeded the liability coverage on Counts's truck. Irons had a Commercial Auto Policy with Farm Bureau that covered its truck. The policy provided UIM coverage of $50,000 per individual and $100,000 per occurrence. Kennedy sought UIM coverage under his employer's insurance policy, but Farm Bureau denied coverage.

Farm Bureau filed this declaratory judgment action seeking a determination whether Kennedy was entitled to UIM benefits under the policy. Farm Bureau (1) disputed whether Kennedy was ever pinned to his employer's vehicle; and (2) asserted Kennedy was standing by his employer's vehicle and not in actual physical contact with it when the accident occurred and, thus, did not meet the policy's definition of "occupying" the vehicle.

Kennedy was initially granted summary judgment. The Court of Appeals reversed, holding there was a genuine factual dispute regarding whether Kennedy was ever pinned against his employer's truck, which precluded summary judgment. *S.C. Farm Bureau Mut. Ins. Co. v. Kennedy,* Op. No. 2006–UP–423 (S.C. Ct.App. filed Dec. 19, 2006).

A bench trial was subsequently held by Judge J. Mark Hayes on the declaratory judgment action. Judge Hayes determined Kennedy was entitled to UIM benefits. As part of his findings of fact, Judge Hayes found that Kennedy had left the engine running on his employer's truck, with a dog inside, and that Kennedy had a brief conversation with Teddie Robinson at the back of the employer's truck after performing the errand for his employer. Judge Hayes further found that Kennedy "was in physical contact [with the insured vehicle] prior to the accident but had removed his hand from the *insured vehicle* in his efforts to avoid being injured when the other vehicle was about to strike him," and that "the evidence, especially the medical documentation submitted as to the injuries, clearly established the injuries were consistent as being caused by physical contact with the *insured vehicle.*"

Judge Hayes stated he was reaching this result in light of this Court's mandate that "upon" and "occupying" should be construed in favor of the insured, citing *McAbee v. Nationwide Mutual Insurance Co.,* 249 S.C. 96, 152 S.E.2d 731 (1967). Judge Hayes noted the policy at issue in *McAbee,* like the policy here, did not contain any restrictions as to how or in what manner the insured was to be upon the vehicle.

In *McAbee,* this Court considered a Nationwide insurance policy that provided benefits in case of bodily injury or death "while in or upon, entering or alighting from" a motor vehicle. *Id.* at 99, 152 S.E.2d at 732. The insured was driving his employer's truck when he came upon his employer's brother, whose tractor had broken down, and stopped to help him. *Id.* at 98, 152 S.E.2d at 731–32. The insured, while preparing to leave in the truck, went to the rear of the truck to remove a chain. *Id.* at 98, 152 S.E.2d at 732. At that time the tractor began rolling toward the rear of the truck where the insured, stooped with his back turned, was engaged in removing the chain *Id.* "[T]he insured straightened up, turned, and placed his hands on the tractor with his back against the truck as if trying to stop the tractor and keep it from striking him." *Id.* at 98–99, 152 S.E.2d at 732. However, he was crushed to death between the rear of the truck and the front of the tractor. *Id.* at 99, 152 S.E.2d at 732.

This Court stated it was conceded the insured was not in, entering, or alighting from the truck, so "[t]he sole question is whether the insured, while standing on the ground with his back against the parked truck in an effort to keep the tractor from rolling against him, was Upon the truck within the meaning of the policy." *Id.*

The Court observed that this provision had not previously been construed by this Court, and while cases in other jurisdictions are not in complete agreement, "the rule seems to be generally recognized that the words 'in or upon' as used in such policy provisions require a broad and liberal construction in favor of the insured and that by the weight of authority actual physical contact with the insured's automobile is sufficient to establish that the insured was Upon the vehicle as contemplated by such policies." *Id.*

The Court held that the insured was in actual physical contact when he had his back against the insured vehicle trying to protect himself and thus was "upon" it within the meaning of the policy provision, triggering his entitlement to UIM benefits. *Id.* at 100, 152 S.E.2d at 733.

In the current matter before us on appeal, Judge Hayes found Kennedy was entitled to UIM coverage because he (1) "was in physical contact with the insured vehicle at the exact moment of the accident, by virtue of being knocked against it or pinned to it," and (2) "that the evidence established that [Kennedy] was in physical contact [with the insured vehicle] prior to the accident but had removed his hand from the *insured vehicle* in his efforts to avoid being injured when the other vehicle was about to strike him."

The Court of Appeals reversed. The Court of Appeals concluded that Kennedy was not occupying his employer's truck at the time of the accident because "[h]e had departed the truck, gone inside the restaurant, and returned to the parking lot to talk with his half-brother near the vehicle when he was hit by the pickup truck. As a result, there was no causal connection between Kennedy's use of the [employer's] truck and his being struck by Counts'[s] pickup truck." *S.C. Farm Bureau Mut. Ins. Co. v. Kennedy,* 390 S.C. 125, 139, 700 S.E.2d 258, 266 (Ct.App.2010). This Court granted Kennedy's petition for a writ of certiorari.

## II. STANDARD OF REVIEW

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). "When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law." *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 46, 717 S.E.2d 589, 592 (2011) (citation omitted).

"In an action at law tried without a jury, the appellate court will not disturb the trial court's findings of fact unless there is no evidence to reasonably support them." *Id.* at 46–47, 717 S.E.2d at 592 (citation omitted). However, an appellate court may make its own determination on questions of law and need not defer to the trial court's rulings in this regard. *Id.* at 47, 717 S.E.2d at 592.

## III. LAW/ANALYSIS

Initially, it is noted that the Court of Appeals ignored the trial court's findings of fact and substituted its own. Significantly, the Court of Appeals ignored the trial court's findings that Kennedy had physical contact with the insured truck until he attempted to escape the impending danger and that Kennedy also had actual physical contact as a result of being pinned between the insured vehicle and Counts's truck. These findings of fact are supported by evidence in the record. Additionally, it appears the Court of Appeals based its decision on a question not raised by the parties, that being whether or not Kennedy was using the insured vehicle at the time he was injured. It is undisputed that Kennedy was performing an errand for his employer and was preparing to return to the work site when he was struck by Counts.

The proper question before the court was whether or not Kennedy had actual physical contact with the insured truck when he was injured. This was a question of fact for the trial court, which it answered in the affirmative. The evidence in the record supports the trial court's finding. Farm Bureau attempts to convert this question of fact to one of law by arguing a finding of coverage would contravene the policy's provisions. Notwithstanding our dispositive "any evi-

dence" standard of review, we will review the policy's provisions in light of the facts of this case because it presents a novel question for this Court: Is it unreasonable to require that actual physical contact be maintained when facing impending danger of harm?

Part II of Farm Bureau's policy, concerning UIM coverage, provides it will pay UIM benefits to a "covered person" as follows:

> We will pay damages for **bodily injury** or **property damage** a **covered person** is legally entitled to collect from the owner or operator of an **underinsured motor vehicle.** The **bodily injury** or **property damage** must be caused by an accident arising out of the operation or ownership of the **underinsured motor vehicle.**

A "covered person" is defined in Part II as including a "person **occupying your** [the insured's] **covered auto.**" "Occupying" appears in the General Definitions portion of the policy and "means having actual physical contact with an **auto** while in, upon, entering, or alighting from it." Kennedy contended he was entitled to UIM coverage because he was "upon" the insured vehicle when he was injured and thus was "occupying" it.

On appeal, Kennedy argues that in considering whether he was "upon" his employer's truck, it should not matter when the physical contact occurs, i.e., whether he was touching the insured vehicle at the time he was crushed by another vehicle, or whether he was touching it, then ran away for his safety before being pinned back upon it, as in the current appeal. In either circumstance, the insured was in physical contact with the insured vehicle and injured.

Farm Bureau contends this interpretation would contravene the policy, which provides the physical contact must occur while the individual is "occupying" the vehicle. Farm Bureau argues Kennedy was not in physical contact with his employer's truck when Counts's truck initially hit him, and the fact that he was pushed into the vehicle as a result of the accident does not change his status.

Like the Court of Appeals, Farm Bureau erroneously assumes that this accident begins and ends at the exact

moment of contact between the Counts vehicle and Kennedy. This assumption is flawed because it ignores the unfolding events surrounding the accident. The trial court found that Kennedy had physical contact with the Irons truck until he was forced to relinquish it in an attempt to escape injury, and that Kennedy suffered additional injuries when he was pinned between the Irons truck and Counts's truck. The temporal continuum of an accident necessarily includes more than the point in time of initial impact. It also includes the events immediately surrounding the initial impact and the point in time that the last injury was inflicted. *See Whitmire v. Nationwide Mut. Ins. Co.,* 254 S.C. 184, 191, 174 S.E.2d 391, 394 (1970) (observing the party was injured while still engaged in the completion of those acts reasonably to be expected from one acting under similar conditions).

In *McAbee,* although the policy did not require physical contact, there was, in fact, physical contact between McAbee and his employer's truck when McAbee was pinned between his employer's truck and a tractor.[1] This Court held that McAbee's physical contact with his employer's truck would satisfy the definition of "upon" because "upon" was not so narrowly defined as to mean only "on top of." *McAbee,* 249 S.C. at 99, 152 S.E.2d at 732. In the current appeal, the trial court specifically found that Kennedy "was in physical contact [with his employer's insured vehicle] prior to the accident but had removed his hand from the *insured vehicle* in his efforts to avoid being injured when the other vehicle was about to strike him." This factual finding has not been challenged on appeal, and we believe it establishes the requisite physical contact for UIM coverage under the circumstances present here. Moreover, the trial court also found that physical contact was established when Kennedy was pinned against the Irons truck. We agree.

As noted in *American Jurisprudence, Second Edition,* whether a person is deemed to have been "occupying" a vehicle depends on the facts of each case, although the general trend appears to be in favor of a liberal construction of the

---

1. The *McAbee* court ostensibly believed that it made no difference when the physical contact occurred because it did not address whether *McAbee* first came in physical contact with the tractor or with the insured truck.

term "occupying." 7A Am.Jur.2d *Automobile Insurance* § 455 (2007).[2]

In this case, Kennedy drove his employer's truck to the restaurant, where he left the keys in the truck with the engine running and a dog inside while he went inside the building. Shortly thereafter he returned to the parking lot, where he was standing with his hand on the vehicle when he saw the approaching danger and attempted to flee before immediately being struck and injured by Counts's truck. Thus, Kennedy was in physical contact with his employer's vehicle immediately prior to being struck by Counts's vehicle. The fact that Kennedy had engaged in a conversation at the rear of the truck is not important. Holding a conversation outside of an automobile is commonplace and is to be expected in the ordinary use of a vehicle.

Kennedy argues Farm Bureau's interpretation of the policy, which would deny coverage here while allowing it in a case like *McAbee*, where the individual was bracing himself against his employer's truck when he was crushed by a tractor, would be an "unreasonable" distinction that would unfairly deny him UIM benefits. We agree that requiring Kennedy to keep his hand upon the vehicle, remain in the path of Counts's oncoming vehicle, and risk being crushed is unreasonable, unconscionable, and not in accordance with the legislative purpose behind enactment of the UIM statute. *See* S.C.Code Ann. § 38–77–160 (2002) (stating automobile insurance "carriers shall ... offer ... underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist

2. *See* Jonathan M. Purver, Annotation, *Automobile Insurance: When is a Person "Occupying" an Automobile Within Meaning of Medical Payments Provision*, 42 A.L.R.3d 501 (1972 & Supp.2011) (discussing cases where the claimant was injured while in various situations: alighting from the vehicle, with his or her body partly in the vehicle, reaching into the vehicle, standing near the vehicle, placing an object into the trunk, leaning against the vehicle, etc.); R.P. Davis, Annotation, *Scope of Clause of Insurance Policy Covering Injuries Sustained While "in or on" or "upon" Motor Vehicle*, 39 A.L.R.2d 952, at § 4 (1955 & Later Case Service 2005) (evaluating "in or upon" and whether the injured person had physical contact with the vehicle immediately prior to the injury).

or in excess of any damages cap or limitation imposed by statute"); *Floyd v. Nationwide Mut. Ins. Co.,* 367 S.C. 253, 260, 626 S.E.2d 6, 10 (2005) ("The central purpose of the UIM statute is to provide coverage when the injured party's damages exceed the liability limits of the at-fault motorist. The UIM and UM statutes are remedial in nature and enacted for the benefit of injured persons; therefore, they should be construed liberally to effect the purpose intended by the Legislature." (citation omitted)); *see also O'Neill v. Smith,* 388 S.C. 246, 254–55, 695 S.E.2d 531, 535–36 (2010) (observing under South Carolina law, carriers must offer UIM coverage up to the limits of the insured's liability coverage, and the purpose of the UIM statute is to provide *to* an insured who is an injured claimant the same benefit level as that provided *by* the insured to those asserting claims against the insured (citation omitted)).

To interpret the physical contact requirement in a manner that would require Kennedy to succumb to the approaching danger rather than relinquish physical contact would be unreasonable and unconscionable. Kennedy's conduct was reasonably to be expected from one acting under similar circumstances when faced with a hazard encountered in the ordinary use of a vehicle. *See Whitmire v. Nationwide Mut. Ins. Co.,* 254 S.C. 184, 191, 174 S.E.2d 391, 394 (1970) (holding where the plaintiff was struck within two or three feet of the automobile while running to attempt to escape an imminent impact with an oncoming vehicle, the plaintiff was still "alighting from" the automobile because the "meaning [of a policy term] must be related to the particular use of the automobile and the hazards to be encountered from such use"; the Court found "[i]t is reasonable to conclude that coverage was intended to protect a guest against the hazards from passing vehicles in the vicinity, while the guest ... is still engaged in the completion of those acts reasonably to be expected from one ... [acting] under similar conditions"); *Holler v. Holler,* 364 S.C. 256, 269, 612 S.E.2d 469, 476 (Ct.App.2005) (noting if a court finds a contract clause was unconscionable at the time it was made, the court may refuse to enforce the clause or limit its application to avoid an unconscionable result; what is unconscionable depends upon all the facts and circumstances in a particular case); *see also Blakeslee v. Farm Bureau Mut.*

*Ins. Co.*, 388 Mich. 464, 201 N.W.2d 786, 791 (1972) ("It would be unconscionable to permit an insurance company offering statutorily required coverage to collect premiums for it with one hand and allow it to take the coverage away with the other by using a self-devised [ ] limitation. Nothing could more clearly defeat the intention of the legislature.") (*cited in* Donald M. Zupanec, Annotation, *Doctrine of Unconscionability as Applied to Insurance Contracts,* 86 A.L.R.3d 862, 872 (1978 & Supp. May 2012)); 8 Richard A. Lord, *Williston on Contracts* § 18:5, at 26–33 (4th ed.2010) (stating the concept of unconscionability, and the standard applied by the UCC, has been extended by the courts to a variety of contexts, including provisions in insurance agreements).

■ Although Farm Bureau contends this dispute can be resolved by a literal interpretation of the plain language of "physical contact," we disagree, as the Supreme Court of Rhode Island recently observed the literal interpretation of policy language will be rejected where its application would lead to unreasonable results and the definitions as written would be so narrow as to make coverage merely "illusory." *Empire Fire & Marine Ins. Cos. v. Citizens Ins. Co.*, 43 A.3d 56, 60 (R.I.2012).

Moreover, in *Chavez v. Arizona School Risk Retention Trust, Inc.*, 227 Ariz. 327, 258 P.3d 145 (Ariz.Ct.App.2011), the Court of Appeals of Arizona recently questioned the validity of a policy provision limiting occupying to "being in or being in physical contact with a covered Automobile, including while getting into or getting out of that covered Automobile." *Id.* at 148. It stated, "Courts 'will not interline the UM [ (uninsured motorist) ] and UIM statutes to permit exclusions that have not been mentioned by the legislature.' " *Id.* (alteration in original) (quoting *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 9 P.3d 1049, 1057 (2000)). The court also cited the principle that coverage must be in conformance with that contemplated by the associated statute: "Exclusions and limitations on coverage are generally invalid unless contemplated by the statute." *Id.* (quoting *Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 859 P.2d 724, 727 (1993)).

In another case involving a physical contact requirement, the Appellate Court of Illinois questioned the validity of the

provision in dispute, which defined "occupying" to require physical contact for UM and UIM coverage, but not for liability coverage, as the legislative intent was to provide UM and UIM coverage at a level at least equal to that in the insured's liability coverage. *DeSaga v. West Bend Mut. Ins. Co.*, 391 Ill.App.3d 1062, 331 Ill.Dec. 86, 910 N.E.2d 159, 167 (2009). The court found that, even if the questioned definition were allowed to stand, under "the unique facts of this particular case," the driver was in "virtual physical contact" with his vehicle where he had left the engine running and turned on his flashers before exiting the vehicle to remove nearby debris from the roadway. *Id.*, 331 Ill.Dec. 86, 910 N.E.2d at 167–68.

Although we are likewise concerned about the ultimate validity of such definitional provisions[3] and whether they alter, or conflict with, the statutory definition of an insured,[4]

---

**3.** Requiring physical contact for all methods of "occupying" a vehicle could render some terms of coverage meaningless, arguably creating illusory coverage. For example, in *Whitmire*, 254 S.C. at 191, 174 S.E.2d at 394, this Court observed that the phrase "[a]lighting from" of necessity "must [ ] extend to a situation where the body has reached a point when *there is no contact* with the vehicle." (Emphasis added.) The Court explained that, "[i]f the phrase 'alighting from' is limited to the physical act of descending from the automobile, it would be meaningless because a person would still be in contact with it and within the coverage afforded under the terms 'in' or 'upon'." *Id.* Farm Bureau's actual physical contact requirement arguably eliminates coverage when alighting from a vehicle.

**4.** S.C.Code Ann. § 38–77–30(7) (2002) defines an insured as follows: " 'Insured' means the named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise, and *any person who uses with the consent*, expressed or implied, of the named insured the motor vehicle to which the policy applies and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above." (Emphasis added.) There is no requirement of actual physical contact with the insured vehicle at the time of injury to qualify as an insured under the statute. If "actual physical contact" is required, then the phrase "in a vehicle *or otherwise* " appears meaningless. The only statutory limitation is that a non-resident relative and others must have *the consent* of the named insured to use the vehicle. Consent to use the vehicle bestows the same level of coverage upon others as that enjoyed by the named insured. The statutory definition cannot be limited by a contractual provision. *Cf. Boyd v. State Farm Mut. Auto. Ins. Co.*, 260 S.C. 316, 319, 195 S.E.2d 706, 707 (1973) ("It is settled law that statutory provisions relating to an insurance contract arè part of the

that issue was not raised to the trial court nor on appeal to this Court. Therefore, we offer no formal opinion in this regard as the issue is not before us. Rather, we find Kennedy met the physical contact requirement here because it would be unreasonable and unconscionable to interpret the provision to require a party who had physical contact with a vehicle to maintain that contact under circumstances that might result in catastrophic injury. Consequently, we agree with the trial court that Kennedy was "upon" the insured vehicle and met the requirements for UIM coverage. *Cf. C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169 (Iowa 1975) (holding even though the definition of "burglary" in the insurance policies required the exterior of the premises to bear visible marks of force and violence, and only an interior door of the insured's warehouse was damaged during a burglary, the liability-avoiding provision in the definition was, under the circumstances of the case, unconscionable and constituted no bar to recovery).

## IV. CONCLUSION

Initially, we conclude that the trial court's finding of actual physical contact is supported by the evidence. Under the sequence of events that unfolded here, where the trial court found Kennedy had left the engine running on his employer's vehicle, and that he was in physical contact with the covered vehicle (with his hand on the truck) when Counts's vehicle careened towards him, forcing him to relinquish his contact in order to attempt to avoid injury, that Kennedy was "upon" and "occupying" the vehicle at the time of the accident and he is entitled to UIM coverage under the Farm Bureau policy. Moreover, a second, resultant physical contact was established when Kennedy was pinned against the insured vehicle. We

---

contract, and that a policy provision which contravenes an applicable statute is to that extent invalid."); *Potomac Ins. Co. v. Allstate Ins. Co.*, 254 S.C. 107, 173 S.E.2d 653 (1970) (holding exclusionary policy language, whether it constituted an attempt to redefine the term "insured" in contravention of insurance statutes or to afford only conditional or contingent coverage, as opposed to the full coverage required by statutory law, was invalid as it was not in accordance with the state's financial responsibility law).

further conclude that a requirement that an insured remain in physical contact with the insured vehicle in the face of imminent danger is unreasonable and unconscionable. Consequently, we reverse the decision of the Court of Appeals.

**REVERSED.**

Acting Justices JAMES E. MOORE and J. ERNEST KINARD, JR., concur. PLEICONES, Acting Chief Justice, dissenting in a separate opinion in which KITTREDGE, J., concurs.

Acting Chief Justice PLEICONES.

I respectfully dissent. The policy defines "occupying" as "having actual physical contact with an auto while in, upon, entering, or alighting from it." In my opinion, there is no dispute that petitioner was not "in actual physical contact" with the truck when the accident occurred. Unlike the majority, I am unable to agree that an accident continues until the last injury is inflicted. Under this theory, in virtually every case where the victim eventually makes contact with an insured vehicle, whether he was thrown, dragged or carried across the parking lot by another vehicle, there would be coverage. Such an expansive reading renders meaningless the policy language defining "occupying" as "in, upon, entering, or alighting from" the insured vehicle. "[P]arties have the right to make their own contract and it is not the function of this Court to rewrite it or torture the meaning of a policy or extend coverage never intended by the parties." *Torrington Co. v. Aetna Cas. & Sur. Co.*, 264 S.C. 636, 643, 216 S.E.2d 547, 550 (1975). Here, I cannot find petitioner occupied the truck without rewriting the parties' contract.

I would affirm the decision of the Court of Appeals.

KITTREDGE, J., concurs.